PAUL J. PASCUZZI, CA State Bar No. 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for Elli M. A. Mills, J.D., MBA, Receiver

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| USACM LIQUIDATING TRUST, | Civil Action No. 2:08-cv-01276-KJD-RJJ |
| Plaintiff, | |
| v. | Date:   May 25, 2016<br>Time:   9:00 a.m. |
| PLACER COUNTY LAND SPECULATORS, LLC, aka PLACER COUNTY LAND INVESTORS, LLC; et al, | Judge:   Hon.  Kent J. Dawson |
| Defendants | |

**ORDER AUTHORIZING RECEIVER TO ENTER INTO SECOND EXTENDED LISTING AGREEMENT WITH REAL ESTATE BROKER**

Upon consideration of the Verified Motion of Receiver for Order Authorizing Receiver to Enter into Second Extended Listing Agreement with Real Estate Broker [Docket No. 895], after a hearing on proper notice, the Court having considered the motion and arguments, and good cause appearing,

IT IS ORDERED that:

1. The Motion is granted;

2. The Receiver is authorized to enter into the second extended listing agreement with Cornish & Carey to list the Real Property under the terms and conditions set forth in the

///

///

///

1  Listing Agreement attached as Exhibit A; and

2      3.    The Receiver is authorized to take all such action as necessary to effectuate the terms of this order on behalf of the receivership estate, including executing any and all documents.

Dated: __May 27_____, 2016

_____
United States District Judge
District of Nevada

ORDER AUTHORIZING RECEIVER
TO ENTER INTO SECOND EXTENDED LISTING
AGREEMENT

-2-

# EXHIBIT A

**Newmark Cornish & Carey**



## Exclusive Authorization to Sell

|  |  |  |  |
|---|---|---|---|
| **Date:** | May 1, 2016 | **Agent(s):** | Guylon L. Spitzer |
| **Subject Property:** | Placer Vineyards Property 9<br>Placer County, CA | **Seller:** | Placer 1 Owners Receivership |

**1.   Term:**

The undersigned owner ("Owner") hereby authorizes Newmark Cornish & Carey ("Broker") to sell the real property situated in the County of <u>Placer,</u> State of California and located in unincorporated Sacramento County  APNs <u>023-200-010, 023-200-012, 023-200-013</u> ("Property") on an exclusive basis for the period commencing at 12:00 A.M. on <u>May 1, 2016</u> and ending at 12:00 P.M. on <u>November 30, 2017.</u>  If Owner enters into a letter of intent, agreement in principle, option or similar contract concerning a sale of the Property during the time period identified above, Broker's exclusive right to negotiate the sale of the Property is automatically extended by the number of days that the letter of intent, agreement in principle, option or similar contract is in effect. The period of Broker's exclusive right to negotiate the sale of the Property, including any extensions thereof, shall be referred to as the "Term."

**2.   Listing Purpose, Broker Duties & Responsibilities:**

The Purpose for which the Broker is being retained is to market for sale three (3) separate legal parcels of land totaling approximately 338 +/- unimproved acres located in Placer County, within the Placer Vineyards Specific Plan, zoned Agricultural described herein as the Property. The Owner and Broker agree that the Broker's Duties & Responsibilities require a sophisticated level of experience, skill and knowledge in the field of land development, entitlement, federal environmental permitting, residential development, financial analysis, land acquisition, sales and marketing. The Broker shall be required to prepare various forms of marketing materials such as, but not limited to, on-site signage, maps, electronic marketing materials, aerial photography, marketing flyers and detailed offering packages tailored to a variety of buyer prospects which may be revised from time to time as the Owner, and, or, marketing conditions may dictate. At the request of the Owner, the Broker shall be required to attend Placer Vineyards Development Group Meetings, meet and engage with the Owner's consultants and be willing, and able, to offer professional knowledge and land development experience for the purpose of assisting and advising the Owner in strategic decisions that would have a direct impact on the value, and, or, disposition of the Property.

**3.   Conversion To Non-Exclusive:**

Upon expiration of the Exclusive Period, and providing Owner does not enter into an exclusive agreement with a third party broker, Broker is authorized to continue to negotiate the sale of the Property on a non-exclusive basis. The period of Broker's non-exclusive right to negotiate the sale of the Property is hereinafter referred to as the "Non-Exclusive Period." In no event shall the Non-Exclusive Period last for a period longer than the term of the Exclusive Period.

**4.   Purchase Price and Terms:**

The initial asking purchase price for the Property shall be $24,850,000.00 or a price and terms acceptable to Owner. It is the intent of the Owner and Broker to develop additional information over the first 60 days of this listing agreement which information may result in a revision of the purchase price under this agreement.  In that case, the purchase price (asking price) shall be revised as directed by the Owner.

**5.   Agreement to Pay Commissions:**

Owner agrees to pay Broker a commission ("Commission") in accordance with Broker's Schedule of Sale and Lease Commissions specified in Paragraph 12.  Owner agrees that the Commission will be paid to Broker for services rendered during the Term if, prior to the expiration of the Term:

  a.   the Property is sold or joint ventured by or through Broker;

  b.   an offer to purchase the Property is submitted directly or indirectly to Owner by an offeror procured by or referred to Broker who is ready, willing and able to purchase the Property on terms agreeable to Owner;

  c.   an agreement to sell or joint venture the Property is made by Owner.

**6.   Payments Upon Expiration or Termination:**

Owner also agrees that the Commission will be paid to Broker for services rendered during the Term if, within 180 days after the expiration of the Term:

Although all information furnished regarding property for sale, rental, or financing is from sources deemed reliable, such information has not been verified and no express representation is made nor is any to be implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice and to any special conditions imposed by our principal.



## Exclusive Authorization to Sell

a. The Property is sold by or through Broker; or

b. Negotiations commenced with any person or entity with whom Broker negotiated or to whom Broker submitted the Property during the Term lead to the execution of a purchase agreement for the Property within the 180 day period. For the purposes of this paragraph, Broker is presumed to have negotiated with or submitted the Property to any person or entity who submitted an offer to purchase the Property during the Term or whose name appears on a list delivered to Owner by Broker within ten business days immediately following the expiration of the Term.

**7. Dual Agency:**
Owner agrees that Broker may be the agent of both Owner and any prospective purchaser. Owner hereby consents to such dual representation and waives any possible conflict of interest arising out such dual representation.

**8. Owner's Obligations/Authorizations:**
Owner agrees to cooperate with Broker to sell the Property during the Term. During the Term, Owner shall immediately refer to Broker all inquiries of any person or entity interested in the Property who has been procured by or referred to Broker. Without limiting Broker's rights hereunder, during the Term Broker is authorized to (i) accept a deposit from any prospective purchaser and (ii) advertise the Property and place a sign or signs on the Property.

**9. Non-Discrimination:**
It is understood that it is illegal for either Owner or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, sexual orientation, marital status or disability.

**10. Broker's Disclaimer:**
Owner acknowledges that Broker has no specific expertise with respect to the environmental assessment or physical condition of the Property, including, but not limited to, matters relating to: (i) problems which may be posed by the presence or disposal of hazardous or toxic substances on or from the Property, (ii) problems which may be posed by the Property being within the Special Studies Zone as designated under the Alquist-Priolo Special Studies Zone Act (Earthquake Zones), Section 2621-2630, inclusive of California Public Resources Code, and (iii) problems which may be posed by the Property being within a HUD Flood Zone as set forth in the U.S. Department of Housing and Urban Development "Special Flood Zone Area Maps," as applicable.

Owner acknowledges that Broker has not made an independent investigation or determination of the physical or environmental condition of the Property, including, but not limited to, the size or value of the Property, the existence or nonexistence of any underground tanks, sumps, piping, toxic or hazardous substances on the Property. Owner agrees that it will rely solely upon its own investigation and/or the investigation of professionals retained by Owner, at Owner's sole expense, and Owner shall not rely upon Broker to determine the physical and environmental condition of the Property or to determine whether, to what extent or in what manner, such condition must be disclosed to potential purchasers or other interested parties

**11. Owner's Release And Indemnification:**
Owner releases Broker of and from any and all losses, claims, causes of action, liabilities and damages arising out of or connected with the physical or environmental condition, size or value of the Property, conditions of title, zoning, permitted uses and/or claims made by any other party or Broker who may claim they have or are entitled to any compensation, commission, or referral fee that is not otherwise previously agreed to in writing, which shall be evidenced with Seller and Broker's written authorization. Owner shall defend, indemnify, and hold Broker harmless from and against any and all losses, claims, causes of action, liabilities and damages (including, but not limited to, reasonable attorneys' fees and costs), arising out or in connection with information about the Property which is supplied by Owner or Owner's agents or representatives or any material fact about the Property which is known by Owner or Owner's agents or representatives and which Owner fails to disclose to Broker or prospective purchasers.
Owner acknowledges that Broker has not made any investigation of and is not representing or warranting the accuracy or completeness of any documents or information (including, but not limited to, financial reports) ("Reports") reviewed, received, generated or supplied by Owner in connection with this Agreement or any transaction connected with this Agreement. Owner releases Broker of and from any and all losses, claims, causes of action, liabilities and damages arising out of or connected with the accuracy or completeness of Reports supplied to Broker by Owner..

Although all information furnished regarding property for sale, rental, or financing is from sources deemed reliable, such information has not been verified, and no express representation is made nor is any to be implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice and to any special conditions imposed by our principal.

**Newmark Cornish & Carey**



## Exclusive Authorization to Sell

**12. Commission Schedule:**

    a.  *Sale Agreement*:
The Commission for the Sale of the Subject Property shall be equal to four percent (4%) of the total Purchase Price. In the event a Buyer is procured with the assistance of a cooperating Broker the Sales Commission will be increased to five (5%) to be divided as agreed to by and between Buyer's and Seller's Brokers.

    b.  *Property Trade*:
In the event the Owner were to offer the Property as trade value in exchange for the acquisition of any other real property, the Broker shall be entitled to a Commission in accordance with Paragraph 12.a., of this Agreement.

    c.  *Joint Venture Agreement*:
In the event a joint venture agreement is effected in lieu of a sale of the Subject Property, the Commission due hereunder shall be four percent (4%) of the aggregate value of the property being conveyed to the joint venture entity.

    d.  *Time of Payment:*
The Sales Commission shall be due and payable upon closing and distribution of funds to Owner, In the event of installment sale, the commission shall be due and payable at the earlier of receipt of funds on the pro rata amount of the commission due times the fraction of the amount paid to the total purchase price, or upon transfer of title.

    e.  *Interest On Payments:*
In the event that commissions are not paid when due, any amount due and unpaid hereunder shall bear interest at the rate of ten percent (10%) per annum, simple interest, or the maximum amount then allowed by law, whichever is lower, from the time the Commission is due until the time of payment.

**13. Attorney's Fees:**
If any party files any action or brings any proceedings against the other arising out of this Agreement or arising out of any transaction resulting from this Agreement, then the prevailing party shall be entitled to recover, as an element of its cost of suit and not as damages, reasonable attorneys' fees in addition to any other relief to which it is entitled, through appeal. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to the conflict of law principles thereof.

**14. Other Provisions:**
Notwithstanding any other terms and conditions of this Agreement, the parties acknowledge that the Owner is a Receivership under the jurisdiction of the United States District Court District of Nevada. The parties further acknowledge that any contract for sale of the property must be approved by that Court and may be subject to overbid. In no event shall a commission be due and payable unless and until a sale and the commission is approved by the United States District Court, District of Nevada and the sale closes and funds are distributed to Owner or title transfers, pursuant to provisions of this Agreement.

**15. Notice:**
For the purpose of this Agreement all notices to the parties shall be to the following addresses:

Owner: **Elli M. A. Mills, Court Appointed Receiver**, Placer 1 Owners' Receivership, 5401 Longley Lane, Suite 42, Reno, NV 89511, D: 775.826.7800, Fax: 775.826.7802, EMillsPV@aol.com

Broker: **Guy Spitzer, CCIM, ALC,** Managing Director, Newmark Cornish & Carey, 3005 Douglas Blvd., Suite 130, Roseville, CA 95661, D: 916.367.6359, C: 916.768.4520, F: 916.367.6362, gspitzer@newmarkccarey.com

**16. Time is of the Essence:**
Time is of the Essence in this Agreement.

**17. Thirty Day Mutual Right to Cancel.** This Agreement may be cancelled by either party upon thirty day written notice to the other party of its intent to cancel. In the event that the contract is cancelled by the Owner, the provisions of paragraph 6 above shall survive the cancellation.

Although all information furnished regarding property for sale, rental, or financing is from sources deemed reliable, such information has not been verified, and no express representation is made nor is any to be implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice and to any special conditions imposed by our principal.

**Newmark Cornish & Carey**



## Exclusive Authorization to Sell

THE UNDERSIGNED OWNER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS EXCLUSIVE AUTHORIZATION TO SELL AND AGREES THAT IT SHALL BE BINDING UPON THE HEIRS, SUCCESSORS AND ASSIGNS OF THE UNDERSIGNED.

**Seller:** PLACER 1 OWNERS RECEIVERSHIP

NEWMARK CORNISH & CAREY
3005 Douglas Boulevard, Suite 130
Roseville, CA  95661

By: _____
*Elli M.A. Mills, Court Appointed Receiver*

By: _____
*Guylon L. Spitzer, CA RE License #01095648*

Date: _____

Date: _____

ListingAgreement-Placer1 (5-1-16)FINAL

Page 4 of 4

Although all information furnished regarding property for sale, rental, or financing is from sources deemed reliable, such information has not been verified, and no express representation is made nor is any to be implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice and to any special conditions imposed by our principal.