PAUL J. PASCUZZI, CA State Bar No. 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com

Attorneys for Elli  M. A. Mills, J.D., MBA, Receiver

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>RECEIVERSHIP OF PLACER COUNTY LAND SPECULATORS | Civil Action No. 2:08-cv-01276-KJD-RJJ<br><br>Date:   September 8, 2020<br>Time:   11:00 a.m.<br>Judge:  Hon.  Kent J. Dawson |

**STIPULATION FOR POSTPONMENT OF FORECLOSURE SALE**

Elli M. A. Mills, the Court Appointed Receiver herein ("Receiver"), and Secured Creditor IRA Services Trust Co. CFBO John Terry ("Terry" and, together with the Receiver, the "Parties"), hereby stipulate as follows:

**RECITALS**

A.     On December 16, 2008, Elli M. A. Mills was appointed as Receiver for approximately 275 individual Lenders holding a beneficial interest (collectively, the "Placer Lenders") in the Promissory Note dated on or about December 10, 2004, executed by Placer County Land Speculators, LLC aka Placer County Land Investors, LLC in the original principal amount of $27,500,000; as modified by the First Amendment to Loan Documents dated February 17, 2005; by the Second Amendment to Loan Documents dated April 12, 2005; by the Third Amendment to Loan Documents dated June 1, 2005; by the Fourth Amendment to Loan Documents dated July 13, 2005; by the Fifth Amendment to Loan Documents dated September 19, 2005; and by the Sixth Amendment to Loan Documents dated November 3, 2005 (collectively, the "Placer 1 Note"), but only to the extent of the Placer 1 Lenders' interest in the

Placer 1 Note. The ending principal amount of the Placer 1 Note was $31,500,000.

B. The Placer 1 Note was secured by a Deed of Trust on real property located in Placer County, California. The primary asset of the receivership estate is that real property (the "Receivership Property").

C. On or about December 22, 2008, the Receiver foreclosed the Placer 1 Lenders' security interest in the Receivership Property. On December 31, 2008, the deed was recorded in the records of Placer County, California. At that time, the approximately 275 individual Placer 1 Lenders became the owners as tenants in common of the Receivership Property (the "Owners").

D. The Receivership Property consists of 338.6 acres of unimproved land located in south Placer County, California. The Receivership Property is a part of the Placer Vineyards Development, which is approximately 5,200 acres of land authorized under the Placer Vineyards Specific Plan for approximately 14,000 home sites and retail and commercial property development. In addition to the Receivership, there are 21 other landowners in the Placer Vineyards Development.

E. The Receivership Property is planned for 994 residential units in three parcels: 9A is 152.3 acres and is planned for 472 residential units; 9B is 126.5 acres and is planned for 273 residential units; and 9C is 59.50 acres and is planned for 249 residential units.

F. On April 20, 2015, this Court entered an order authorizing the Receiver to obtain financing from Terry in the original amount of $4,750,000 secured by a first priority deed of trust on the Receivership Property ("Terry Loan") and to issue receiver certificates in connection with such financing. In the loan documents, Terry consented to the jurisdiction of the Court. Throughout this case and at various times, the Court authorized the Receiver to increase the principal amount of the Terry Loan to $7,250,000 and extend the maturity date to March 31, 2020.

G. After the maturity date on March 31, 2020, Terry sent a default letter and then caused a foreclosure trustee to record a Notice of Default and Election to Sell against the Receivership Property on May 13, 2020. On August 17, 2020, Terry caused a Notice of Trustee's Sale to be recorded, setting a foreclosure sale date of September 23, 2020.

H.      As the Court record demonstrates, during the pendency of this case, the Receiver has made diligent efforts to liquidate the Receivership Property to pay the Terry Loan, unsecured claims and distribute proceeds to the Owners. In the fall and winter of 2019-2020, the Receiver began discussing a joint venture with Mr. Steve Tetrick of United Capital Corporation and KSM, Inc. The general terms of the joint venture agreement had been agreed by the parties. They are outlined in the Verified Receiver's Status Report at Docket No. 1049. It provides waterfall returns to the parties, and in the Receiver's judgment, it would provide the best result to the Owners in that the eventual return to them is projected to be in the range of 30% and 50% of their original investment.

I.      The Receiver contends that just at the time when the parties planned to draft and enter into a joint venture agreement, the COVID-19 pandemic hit the country and the world, causing economic uncertainties to the point that lenders and financial institutions universally put funding projects on hold, resulting in difficulty in securing the financing for the joint venture.

J.      The Receiver and the proposed joint venture partner continue to work to secure a loan to facilitate the joint venture. This effort has recently borne fruit, such that the Receiver believes that term sheets from potential lending sources are forthcoming soon, which will result in a joint venture and operating agreement. Once an agreement is executed, it would be submitted to the Owners for their review and the Court immediately thereafter for its approval. If approved by the Court, the transaction would result in the payment in full of the Terry Loan, including all interest and allowable costs.

K.      On August 11, 2020, the Court held a status conference on the Receiver's potential request for a temporary stay of the foreclosure sale pending finalization, court approval and closing of a joint venture transaction. The Court asked the Parties to brief the issue of whether the Court had the legal authority to issue a stay. At a further status conference on August 20, 2020, the Court set a further status conference for September 8, 2020, and a tentative evidentiary hearing on September 14, 2020 to consider whether a stay should be granted.

L.      Terry does not stipulate to the truth of the facts and statements set forth in these Recitals.

M.  The Parties have agreed on the following postponement of the foreclosure sale, upon certain conditions set forth herein, to resolve the Receiver's request for a stay and to allow the Receiver the opportunity to obtain Court approval of a joint venture transaction, if one is obtained.

N.  The Parties deem it to be in their mutual interests to enter into the stipulation below.

## **AGREEMENT**

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, all of the parties to this Stipulation hereby stipulate and agree as follows:

1.  The Receiver will use his best efforts to produce a signed joint venture agreement, which includes a non-refundable $250,000 deposit ("Deposit") from the joint venture partner ("Joint Venture Deal") to be deposited as set forth in paragraph 7 below in good funds no later than 5 p.m. on September 17, 2020.

2.  If the Receiver does not timely produce the Joint Venture Deal and the Deposit is not timely paid, the Receiver shall not seek a further stay of the September 23, 2020 foreclosure sale, and Terry may proceed with the foreclosure on the September 23, 2020 pursuant to the terms of the Terry Loan and the recorded Notice of Trustee's Sale.

3.  In the event the Receiver timely produces the Joint Venture Deal and the Deposit is paid as set forth in paragraph 1, Terry shall cause the foreclosure sale to be postponed to allow the Receiver to obtain Court approval of the Joint Venture Deal, the order approving it to become non-appealable and the Joint Venture Deal to close within 45 days of Court approval of the Joint Venture Deal.  Terry may postpone the foreclosure sale to October 19, 2020 or thereafter, to provide time for the hearing on the Joint Venture Deal as set forth below in paragraph 4.

4.  The Receiver shall request that the Court set a hearing for approval of the Joint Venture Deal on or about October 13-14, 2020 to allow approximately 20 days' notice to parties in interest, which is shortened notice under the Receivership Order by approximately 20 days. Assuming the Court approves the Joint Venture Deal and issues the order by October 16, 2020,

1  Terry shall cause the foreclosure sale to be further postponed to December 2, 2020 or thereafter,
2  which will allow at least 45 days from the entry of the Court order approving the Joint Venture
3  Deal.

4      5.    For the Joint Venture Deal to be considered for approval, it must include sufficient
5  funding to pay Terry in full at the closing of the Joint Venture Deal the Loan principal, all
6  accrued interest, all attorneys' fees and costs and all foreclosure fees and costs in accordance with
7  the terms of the note and modifications thereof ("Payoff"). The closing of the Joint Venture Deal
8  must occur such that Terry receives the Payoff in good funds no later 5:00 pm on November 30,
9  2020.

10      6.    In the event the Joint Venture Deal does not close prior to November 30, 2020, the
11  Receiver shall pay Terry from the Deposit all accrued interest, property taxes, penalties, legal
12  fees, foreclosure fees and costs accrued from September 23, 2020 to December 2, 2020, up to, but
13  no greater than, the amount of the Deposit.

14      7.    Further, in the event the Joint Venture Deal does not close prior to November 30,
15  2020, in addition to the payment described in paragraph 6 from the Deposit, Terry may proceed to
16  the foreclosure sale on or about December 2, 2020 pursuant to the terms of the Terry Loan and
17  the recorded Notice of Trustee's Sale, and the Receiver shall not seek a further stay of the
18  foreclosure sale and shall not take any other action to delay the foreclosure sale.

19      8.    The non-refundable deposit for the Joint Venture Deal shall be held in a separate
20  trust account by counsel for the Receiver.

21      9.    The Parties hereby jointly request that the Court take the evidentiary hearing set
22  for September 14, 2020, off calendar.

23      10.    The provisions of this Stipulation shall bind the Parties and their successors and
24  assigns.

25  //
26  //
27  //
28  //

11. The Court shall retain jurisdiction to interpret, implement, and enforce the provisions of this Stipulation.

Dated: September 4, 2020

        FELDERSTEIN FITZGERALD
        WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
    PAUL J. PASCUZZI
    Attorneys for Elli M. A. Mills, Receiver

Dated: September 4, 2020

        PARKINSON PHINNEY

By: */s/ Donna Parkinson*
    DONNA PARKINSON
    Attorneys for IRA Services Trust Co. CFBO John Terry

IT IS SO ORDERED.
DATED: September 9, 2020

_____
KENT J. DAWSON, U.S. DISTRICT JUDGE